IN RE APPLICATION OF PIONEER AIRWAYS, INC., DENVER, COLORADO, FOR AUTHORITY TO OPERATE IN NEBRASKA AS A CLASS "C" AIR CARRIER. PIONEER AIRWAYS, INC., A NEBRASKA CORPORATION, APPELLEE, V. CITY OF KEARNEY, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT, IMPLEADED WITH CITY OF MCCOOK, NEBRASKA, ET AL., APPELLEES, COLUMBUS AIRPORT AUTHORITY ET AL., INTERVENERS-APPELLEES. IN RE APPLICATION OF STAR AVIATION CORP., DENVER, COLORADO, FOR AUTHORITY TO OPERATE AS A CLASS "C" AIR CARRIER IN NEBRASKA INTRASTATE AIR TRANSPORTATION. STAR AVIATION CORP., DENVER, COLORADO, APPELLEE, V. CITY OF KEARNEY, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT, IMPLEADED WITH PIONEER AIRWAYS, INC., APPELLEE.

256 N. W. 2d 324

Filed July 13, 1977. Nos. 41076, 41173.

Michael E. Kelley, for appellant.

A. J. Swanson of Peterson, Bowman, Coffman &

Larsen and H. Edward Kluver, for appellee Pioneer Airways, Inc.

Noyes W. Rogers and Michael Johnson, for interveners-appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. THOMAS, J.

Pioneer Airways, Inc., and Star Aviation Corp. each filed applications seeking authority from the Nebraska Public Service Commission to operate an air carrier service between Denver, Colorado, and points in Nebraska. Pioneer sought to operate its service between Denver and Omaha with intermediate stops at Chadron, Alliance, Sidney, McCook, Kearney, Hastings, Columbus, and Lincoln. Star sought to operate its service between Denver and Columbus, with intermediate stops at McCook, Hastings, and Kearney. The appellant City of Kearney protested each application and filed a special appearance challenging the jurisdiction of the Nebraska Public Service Commission to issue the requested certificates of authority. The City of Kearney maintains that the Commission lacks jurisdiction under Nebraska's statutes, that the Commission lacks jurisdiction due to its own rules and regulations, and further that the field has been preempted by the federal government.

On first impression, the case would seem to be controlled by Frontier Airlines, Inc. v. Nebraska Department of Aeronautics, 175 Neb. 501, 122 N. W. 2d 476 (1963). In that case, Frontier Airlines sought a disclaimer of jurisdiction by the then Nebraska State Railway Commission, now the Public Service Commission, of any attempt to assert jurisdiction over the matter of discontinuance of service over applicant's segment No. 13. That segment extended between Omaha, Nebraska, and Casper, Wyoming,

with intermediate points of Lincoln, Columbus, Norfolk, Ainsworth, Valentine, and Chadron in Nebraska and Douglas and Lusk in Wyoming. We held: "It appears that Congress has pre-empted the field of interstate air transportation in regard to the routes and points to be served by interstate air carriers to the exclusion of conflicting regulation by the states. * * *

"It follows that the Nebraska State Railway Commission lacks authority to compel a carrier licensed by the Civil Aeronautics Board to continue operations over a segment which that board has authorized to be discontinued, since the federal authority is paramount in this area and the conflicting directive of the state's agency interferes with the national policy."

The decision was grounded upon the finding that Title 49 U. S. C., section 1301 et seq., the statutes creating a federal scheme of regulating air traffic, preempted the field of aviation in interstate commerce. Although several of the flights in the segment were wholly intrastate, it was found that even the regulation of those flights was preempted. We said: "The power of Congress over interstate commerce extends to those intrastate activities which so affect interstate commerce or the exercise of the power of Congress over it as to make appropriate the attainment of a legitimate end (aim) of Congress." We also said that the power of Congress " 'to regulate interstate commerce is not limited by the fact that intrastate transactions may have become so interwoven therewith that the effective control of interstate commerce by the Federal Congress incidentally controls intrastate commerce.' "

In the Frontier case, Frontier Airlines was operating under a certificate of public convenience and necessity issued by the Civil Aeronautics Board subject in full to the regulatory requirements of that agency and issued pursuant to Title 49 U. S. C., section 1301 et seq. Section 1386 of that Title allows the

C. A. B. to exempt certain air carriers from many of the regulatory requirements as provided pursuant to Title 49 U. S. C., section 1301 et seq. Both Star Aviation Corp. and Pioneers Airways, Inc., are within the class of air carriers as exempted by Title 49 U. S. C., section 1386. Specifically, under the regulations adopted by the C. A. B. pursuant to section 1386, both of the appellees are classified as "air taxi operators" and are exempt from several provisions of the Federal Aviation Act. See 14 C. F. R., §§ 298.1 to 298.11. Air taxi operators are required to register with the Board and to renew the registration biannually. See 14 C. F. R., § 298.21. An air taxi operation must not use "large aircraft" and must maintain liability insurance. See 14 C. F. R., § 298.3. Both Star and Pioneer would be subject to further regulation under 14 C. F. R., Part 298, because they are classified as a "commuter air carrier" under 14 C. F. R., section 298.2. A commuter air carrier is designated as any air taxi operator which "performs at least five round trips per week between two or more points and publishes flight schedules which specify the times, days of the week and places between which such flights are performed." 14 C. F. R., § 298.2. A commuter air carrier is required to file reports with respect to such matters as points served, traffic carried, and schedules. 14 C. F. R., sections 298.60 and 298.61. Thus, although the Board has granted an exemption to the applicants which covers many of the provisions of Title 49 U. S. C., section 1301 et seq., it is clear that such exemption must be specifically applied for, granted by the Board, and renewed annually. Even with the exemption, air taxi operators are still subject to various reporting requirements and economic conditions.

Appellees now contend that Congress has not preempted the field of regulation as to the exempted air taxi operators of which Star and Pioneer are classified. Appellees note that there is a considerable dis-

tinction between an air carrier operating pursuant to a certificate of public convenience and necessity and an air carrier operating as an air taxi operator. It is pointed out that a certified air carrier may only operate over routes and with conditions as determined by the Board, while an exempted air taxi operator may go in and out of business at will. Thus, it is argued that Congress has not preempted the field as to air taxi operators and that the Public Service Commission may enter the field under the provisions of section 75-201, R. R. S. 1943, which provides: "Any * * * corporation * * * who undertakes to transport passengers or property for the general public in intrastate commerce by any airborne vehicle is hereby declared to be a common carrier and subject to commission regulation."

Appellees concede that the Public Service Commission can have no jurisdiction of flights of Star or Pioneer which originate in one state and terminate in another state. However, it is argued that the Commission does have jurisdiction over those portions of flights of Star and Pioneer which originate and terminate in Nebraska. Under Title 49 U. S. C., section 1386, an air carrier may be exempted only when full regulation would work an undue burden upon the air carrier or class of air carriers. It is not indicated that Congress intended to abandon the field of regulation of air taxi operators. Because the service offered by Star and Pioneer is identical with that of Frontier in the Frontier case, it is clear that Congress can regulate the proposed flights of Star and Pioneer. As in the earlier case, the intrastate segments of the proposed flights of Star and Pioneer have become so interwoven with the interstate segments that the effective control of the interstate segments by Congress incidentally controls the intrastate segments. Only the difference in classification suggests that Congress has abandoned the field and left it open to regulation by the Commission. As

noted earlier in the opinion, an exemption under Title 49 U. S. C., section 1386 is at best a partial exemption with the Board maintaining sufficiently strong controls to monitor the activities of these groups. It is the ruling of the Board that full regulation would work an undue burden upon the exempted groups. Such a determination does not show that Congress intended to abandon the field but instead shows an intention that such field should not be fully regulated. Thus, it is clear that any assertion of jurisdiction by the Commission would be an intrusion into a field in which Congress has asserted jurisdiction.

Since the Commission has assumed jurisdiction beyond its limits, the orders are reversed and the causes remanded to the Commission with directions to dismiss the applications.

REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.